UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| RANDY W WILLIAMS, CHAPTER 7 § <br> TRUSTEE OF THE BANKRUPTCY § <br> ESTATE OF 7303 HOLDINGS INC., § <br> JAMES DOUTHITT § <br> § <br> VS. § <br> § <br> SEABREEZE FINANCIAL, LLC, § <br> KATHLEEN COLT, CHARLES LONG, § <br> STUMPF FARRIMOND PC, ELBAR § <br> INVESTMENTS INC. § | ADV. NO. 10-03079 |

### RANDY W. WILLIAMS, TRUSTEE'S COMPLAINT

TO THE HONORABLE U.S. BANKRUPTCY JUDGE:

COMES NOW Randy W. Williams, Trustee of the Estate of 7303 Holdings, Inc., and files this Complaint and would show the following:

### A. Parties

1.     Randy W. Williams is the duly appointed and serving Chapter 7 Trustee (hereafter "Trustee") for the Chapter 7 Bankruptcy Estate of *7303 Holdings, Inc*, Case No. 08-36698-H1-7, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division (hereafter the "Estate") whose principal place of business is located at 333 Clay St., Suite 3300, Houston, Texas 77002.  The Trustee can be served through his counsel of record Marc Douglas Myers, 3120 Southwest Freeway, Suite 320, Houston, Texas 77098.

2.     James Douthitt is an individual who resides in the State of Texas and conducts business in Harris County, Texas.

3.     Seabreeze Financial, LLC is a Florida corporation doing business in the State of Texas.  Seabreeze has already filed an answer in this proceeding and may be served via its attorney

of record Mr. Hayden Burns, 1001 Fannin Street, Suite 1800, Houston, Texas 77002.

4. Kathleen Colt, Substitute Trustee, is an individual who may be served with process by serving her attorney of record, Mr. Tom Van Arsdel, 600 Travis, Suite 1100, Houston, TX 77002.

5. Charles Long is an individual who may be served with process by serving his attorney of record, Mr. Tom Van Arsdel, 600 Travis, Suite 1100, Houston, TX 77002.

6. Stumpf Farrimond P.C., is a Texas corporation that who may be served with process by serving its attorney of record, Mr. Tom Van Arsdel, 600 Travis, Suite 1100, Houston, TX 77002.

7. Elbar Investments, Inc., may be served with process by serving its registered agent Eli Klaimy, 12400 Overbrook, #40C, Houston, Texas 77077.

## B. Jurisdiction

8. This adversary proceeding arises in and relates to the Chapter 7 case *7303 Holdings, Inc*, Case No. 08-36698-H1-7, which is now pending in this Court. This Court has jurisdiction over this adversary proceeding pursuant to Title 28 U.S.C. §157 and §1334 and is a core proceeding under 28 U.S.C. §157(b)(2).

## C. Procedural and Factual Background

9. 7303 Holdings, Inc., (hereafter "Debtor") filed for voluntary Chapter 11 bankruptcy relief on October 22, 2008 in the case *7303 Holdings, Inc*, Case No. 08-36698-H1-7, in the United States Bankruptcy Court for the Southern District of Texas, Houston Division. On November 25, 2008, the Court granted the Debtor's motion to convert the case to one arising under Chapter 7 of the Bankruptcy Code (Dkt # 33). On December 4, 2008, Randy W. Williams, Trustee, was appointed interim trustee, and has subsequently qualified as permanent trustee. That case is pending before this Court.

10. On December 4, 2009, James Douthitt filed the state court lawsuit *James Douthitt*

*vs. Seabreeze Financial, L.L.C., J.A.S Family Partnership, Kathleen Colt, Substitute Trustee, Charles Long, Stumpf Farrimond, P.C., and Elbar Investments, Inc.*, Cause No. 2009-77613 in the 125th Judicial District Court of Harris County, Texas ("Removed Action"). On January 8, 2010, the Trustee intervened in that lawsuit by filing a Plea in Intervention. On January 11, 2010, the Trustee filed a Notice of Removal to Federal District Court, where the case was assigned Case No. 4:10-cv-0100. On February 17, 2010, pursuant to the General Order of Reference, that case was transferred to this Court under the above captioned adversary proceeding.

11. Prior to the bankruptcy filing, the Debtor operated a recording studio at 7303 Ardmore, Houston, Texas 77054 specializing in rap music. The real property and improvements at 7303 Ardmore ("Ardmore Property") were owned by the Debtor, as well as certain personal property consisting of sound recording and mixing equipment at the location.

12. By a promissory note dated July 6, 2007, Seabreeze Financial, LLC loaned the Debtor $420,000.00, see **Exhibit A** ("Seabreeze Note"). This loan was allegedly secured by a Deed of Trust, Security Agreement, Financing Statement and Absolute Assignment of Rents which was recorded in the real property records of Harris County, Texas on July 13, 2007 ("Seabreeze DOT"), see **Exhibit B**. The DOT allegedly created a lien in favor of Seabreeze as to the Ardmore Property; however, Seabreeze failed to perfect a security interest in any personalty of the Debtor, including the sound recording and mixing equipment, as it did not file a UCC-1. Mr. Ronald Bookman, the Debtor's principal, guaranteed this indebtedness.

13. The Seabreeze Note was a loan of $420,000.00, out of which $100,000.00 was held in escrow by Seabreeze and $60,000.00 was held in reserve for interest payments. On information and belief, the Trustee believes that Seabreeze charged the Debtor usurious interest on the Seabreeze Note. This includes, but is not limited to, charging interest on loan proceeds being held in escrow.

On information and belief, the Trustee is advised that notice regarding these practices was given to Seabreeze by letter dated December 19, 2007, see **Exhibit C**, which is an unsigned copy of that letter received by the Trustee from Mr. Marcellous McZeal. On April 2, 2008, Seabreeze gave notice of acceleration of the Seabreeze Note; however, by letter dated May 5, 2008, Seabreeze withdrew that notice of acceleration and purportedly corrected the charging of usurious interest, see **Exhibit D**. Thereafter, on July 3, 2008 Seabreeze issued a notice of default and intent to accelerate the indebtedness, see **Exhibit E**. On July 14, 2008 Seabreeze issued a notice of acceleration and posting for foreclosure, see **Exhibit F**.

14.     On August 6, 2008, Seabreeze filed a state court lawsuit to foreclose the lien in the case *Seabreeze Financial, LLC vs. 7303 Holdings, Inc., and Ronald Bookman*, Case No. 2008-47158, 164th Judicial District Court, Harris County ("State Court Litigation "). The Debtor then sought Chapter 11 bankruptcy protection. In response, Seabreeze moved for and received relief from the automatic stay. On November 21, 2008 an agreed order for relief was entered, see **Exhibit G** ("Relief Order").

15.     By a promissory note dated January 11, 2008 James Douthitt loaned the Debtor $150,000, **see Exhibit H**. This loan was allegedly secured by a Deed of Trust which was recorded in the real property records of Harris County, Texas on February 25, 2008, see **Exhibit I** ("Douthitt DOT"). Douthitt has not received any form of relief from stay.

16.     Seabreeze proceeded with a foreclosure sale on January 6, 2009. This foreclosure involved three separate auctions, this first two of which failed to close. The first auction commenced at approximately 11:00 a.m., on January 6, 2009 and was conducted by Kathleen Colt, substitute trustee. The substitute trustee's auction notes indicate that the bidders at this sale were Charles Long for Seabreeze, Douthitt for himself, and Prince for himself, a copy of which is attached

as **Exhibit J** ("Colt Auction Notes").  The Trustee is further advised that Douthitt's attorney, James Crowder, was present and that Kent Schaeffer, Prince's attorney, was present (it is not clear whether Mr. Schaeffer was representing Prince at the sale or whether he was just physically present).

17.     The initial auction proceeded with Seabreeze making the first bid ($430,000.00) followed by multiple rounds of competitive bidding between Prince and Douthitt, see Colt Auction Notes.  When the gavel fell, Prince prevailed with a high bid of $675,000.00.  Douthitt's last bid was $650,000.00.  There were no other bidders.

18.     Subsequently, Prince failed to close his winning bid.  Based on the Trustee's investigation to date there are conflicting stories as to the reasons for this failed closing:

> (A)     **Prince's Version**: On information and belief, the Trustee believes that Prince will claim that Douthitt approached him after conclusion of the first auction sale and advised that if he closed the transaction that he would be sued by Douthitt and the matter tied up in litigation.  **The Trustee expressly reserves the right to amend the above allegations as discovery warrants.**
>
> (B)     **Douthitt's Version**: In the alternative, and on information and belief, the Trustee incorporates the following allegations made by Douthitt in the State Court Petition attached as **Exhibit K**.  Douthitt also testified extensively regarding these matters at the a hearing on the Trustee's Motion to Sell and the Debtor's Motion to Compel in the case 7303 Holdings, Inc., Case No. 08-36698-H1-7 on September 28, 2009.  A copy of the transcript of this hearing is attached as **Exhibit L**.  (**The Trustee expressly reserves the right to amend the below allegations as discovery warrants.**):
>
>> (i)     Thereafter [after closure of the first auction], the Plaintiff [Douthitt] approached Prince in order to make sure that he would receive the funds that were owed on the Promissory Note;
>>
>> (ii)    Prince informed the Plaintiff [Douthitt] that he would not purchase the Studio [7303 Ardmore] at that price;
>>
>> (iii)   Prince explained to the Plaintiff [Douthitt] that the bid price was too high and that he would not wire transfer any funds to the Substitute Trustee;
>>
>> (iv)    After it was announced that Prince would not close and that there would be a second auction, Prince, Mr. Schaffer, Mr. Crowder and the Plaintiff [Douthitt] discussed the next sale as Prince believed that he had bid too high a price.  The partes discussed the price that would be above SeaBreeze' credit bid;

  (v) After speaking with the Substitute Trustee, those parties informed Mr. Crowder that the Plaintiff should bring a check in the amount of $482,074.80 to the 3:00 p.m. foreclosure sale. Mr. Crowder also telephone the Substitute Trustee to determine if the $482,074.80 would be sufficient to pay the debt due to to Seabreeze, and purchase the Studio at the foreclosure sale. Instead of speaking with the Substitute Trustee, Long, the attorney for Seabreeze, answered the telephone call. Long informed Mr. Crowder that the $482,074.80 amount would be sufficient to satisfy the debt, but that Seabreeze may bid an amount greater than what 7303 Holdings owed Seabreeze. After speaking with Mr. Long, Mr. Crowder telephoned Plaintiff and informed him to obtain a cashier's check in the amount of $482,074.80 and bring it with him to the 3:00 p.m. foreclosure sale;

  (vi) Prince, who had agreed to purchase the Studio from the Plaintiff [Douthitt], told the Plaintiff [Douthitt] that the $482,074.80 amount was too high a price to pay for 7303 Ardmore, but the Plaintiff [Douthitt] wanted to make sure that he would have his interest protected and believed he could sell the Studio [7303 Ardmore] for a greater amount; and

  (vii) During the bidding, the Plaintiff spoke via cell phone with Prince who indicated he was surprised that another individual was bidding on the Studio. Prince informed the Plaintiff [Douthitt] that the bidding was going too high.

19. A second auction was commenced at 3:00 p.m. that same day. The bidders appearing at that auction were Charles Long for Seabreeze, James Douthitt for himself, Michael Valentine for OPM, LLC. When the gavel fell, Douthitt prevailed with a high bid of $501,000.00. That sale failed to close, allegedly on the basis that Douthitt did not have sufficient cash on hand to close the same. Based on the Trustee's investigation to date, there are conflicting stories as to the reasons for this failed closing.

  (A) **Seabreeze's Version**: On information and belief that Douthitt did not have sufficient cash funds on hand at conclusion of the auction to pay his bid amount and that he had sufficient time in which to obtain additional funds prior to the conduct of the next sale, but failed to do so. **The Trustee reserves the right to amend the above allegations as discovery warrants**.

  (B) **Douthitt's Version**: In the alternative, and on information and belief, that allegedly after conclusion of the second auction Douthitt presented Colt with a cashier's check for $482,074.80 and several hundred dollars in cash funds on hand. Douthitt further allegedly advised Colt that he would write a check for the remaining balance owed and presented a letter purportedly from the Bank of Houston dated January 5, 2009 that the Bank would

guarantee up to $750,000.00 for the benefit of Mr. Douthitt. Allegedly, Colt advised that this payment was insufficient and that she would only accept cash in the amount of $501,000.00 and that such amount had to be received by 3:46 p.m. That Douthitt allegedly negotiated a temporary loan from a third party to bridge the gap in funds, but that such party reneged on that agreement prior to consummation and that after reneging Douthitt had insufficient time to obtain further cash funds to close the transaction. **The Trustee reserves the right to amend the above allegations as discovery warrants**.

20. A third auction was commenced at 3:46 p.m. that same day. The bidders appearing at that auction were Charles Long for Seabreeze, James Douthitt for himself, Vincent Bustamante for Elbar Investments, Inc. ("Elbar"). When the gavel fell, Elbar was the prevailing bidder with a high bid of $482,500. Elbar closed and the property was subsequently conveyed to Elbar by the substitute trustee.

21. On January 8, 2009, a deed was filed in the real property records of Harris County, Texas whereby Elbar conveyed its interest in the Ardmore Property to J.A.S. Family Partnership 3, an entity which is allegedly controlled by Prince, see **Exhibit M**.

22. On information and belief, J.A.S. Family Partnership 3 claims that the recording equipment at the Ardmore Property at the time of the foreclosure was sold along with the real property and improvements by the foreclosure sale.

## D. Causes of Action

23. Based on the foregoing factual allegations, which are incorporated by reference with regard to each cause of action expressed below, the Trustee asserts the following claims against the following persons.

I. Claims Against James Douthitt

24. **Interference with Contract**: On information and belief, the Trustee alleges that Douthitt intentionally interfered with the closure of the first foreclosure sale by threatening Prince that he would engage in litigation against Prince if the sale was closed. Had Douthitt not soured the

sale, the estate would have recovered approximately $190,000.00 from the proceeds of sale ($675,000.00 - $482,000.00 alleged debt owed to Seabreeze). Assuming that Douthit's alleged second lien against the Ardmore Property was valid, and court approval received to pay such claim, he would have been paid in full in the due course of administration of the case and equity of approximately $40,000.00 would have remained to pay creditor claims. Thus, Douthitt's interference with the closure of the first foreclosure sale damaged the estate.

25.     **Bid Chilling, Fraud and/or Conspiracy:** Alternatively, and based upon information and belief, Douthitt's actions at the foreclosure sale constituted unlawful chilling of the bidding process. Based on his own admissions in the state court petition and testimony given by him at the hearing on the Trustee's Motion to Sell and Debtor's Motion to Compel held on September 28, 2009, he attempted to cooperate with Prince and/or Seabreeze and/or possibly Seabreeze representatives to fix the price at which the Ardmore Property would be sold at the second foreclosure sale.

26.     **Equitable Subordination**: Alternatively, and based upon information and belief, based on the foregoing conduct any and all of Douthitt's claims against property of the bankruptcy Estate should be equitably subordinated pursuant to 11 U.S.C. §510 and any lien related thereto transferred to the Estate.

II. Seabreeze Financial, LLC

27.     **Usury and Wrongful Foreclosure**: Based upon the above information and belief, the Trustee alleges that the Seabreeze Note was usurious and that such usury was not corrected within the statutorily proscribed period of time after notice/discovery of the same. Additionally, on information and belief, the Trustee alleges that July 3, 2008 notice of default and of intent to accelerate and the July 14, 2008 notice of acceleration were incorrect and invalid. Accordingly, the

resulting foreclosure was wrongful and should be set aside. The Trustee requests a declaratory judgment to that effect.

28. **Bid Chilling, Fraud and/or Conspiracy**: Alternatively, and based upon the above information and belief, the Trustee alleges that in the event that Seabreeze, or any of its agents or representatives, engaged in conduct or a conspiracy to cause the Ardmore Property to be transferred to Prince, or his agents or representatives, for less than fair value that the Estate be awarded all damages related thereto, or alternatively, set aside the foreclosure sale.

29. **Equitable Subordination**: Alternatively, and based upon the above information and belief, based on the foregoing alleged conduct any and all of Seabreeze's claims against property of the bankruptcy Estate should be equitably subordinated pursuant to 11 U.S.C. §510 and any lien related thereto transferred to the Estate.

30. **Conversion of Personal Property**: Alternatively, and based upon the above information and belief, in the event that Seabreeze did foreclose on the sound recording and mixing equipment, such foreclosure was in violation of the automatic stay and hence void. The Trustee requests damages in the amount of the value of the property converted. Alternatively, the Trustee requests a declaratory judgment that such sale was null and void and that ownership of the sound recording and mixing equipment remains in the Estate.

III.  Kathleen Colt

31. **Bid Chilling, Fraud and/or Conspiracy**: Based upon the above information and belief, the Trustee alleges that in the event that Colt engaged in conduct or a conspiracy to cause the Ardmore Property to be transferred to Prince, or his agents or representatives, for less than fair value that the Estate be awarded all damages related thereto, or alternatively, set aside the foreclosure sale.

32. **Negligence**: Alternatively, and based upon the above information and belief, Colt

negligently conducted the foreclosure sale. Colt had a duty to act as a reasonably prudent substitute trustee in conducting the foreclosure sale and failed to do so by failing to renotice the foreclosure sale to a later date after Prince reneged on his bid of $675,000, or alternatively, closing on the Douthitt runner up bid.

33. **Conversion of Personal Property**: Alternatively, and based upon the above information and belief, in the event that the foreclosure sale included the sound recording and mixing equipment, such foreclosure was in violation of the automatic stay and hence void. The Trustee requests damages in the amount of the value of the property converted. Alternatively, the Trustee requests a declaratory judgment that such sale was null and void and that ownership of the sound recording and mixing equipment remains in the Estate.

IV.  Charles Long

34. **Bid Chilling, Fraud and/or Conspiracy**: Based upon the above information and belief, the Trustee alleges that in the event that Long engaged in conduct or a conspiracy to cause the Ardmore Property to be transferred to Prince, or his agents or representatives, for less than fair value that the Estate be awarded all damages related thereto, or alternatively, set aside the foreclosure sale.

V.  Stumpf Farrimond, PC

35. **Bid Chilling, Fraud and/or Conspiracy**: Based upon the above information and belief, the Trustee alleges that in the event that Stumpf Farrimond, PC, or its agents or representatives, engaged in conduct or a conspiracy to cause the Ardmore Property to be transferred to Prince, or his agents or representatives, for less than fair value that the Estate be awarded all damages related thereto, or alternatively, set aside the foreclosure sale.

VI.  Elbar Investments, Inc.

36.     **Bid Chilling, Fraud and/or Conspiracy**: Based upon the above information and belief, the Trustee alleges that in the event that Elbar, or its agents or representatives, engaged in conduct or a conspiracy to cause the Ardmore Property to be transferred to Prince, or his agents or representatives, for less than fair value that the Estate be awarded all damages related thereto, or alternatively, set aside the foreclosure sale.

37.     **Conversion of Personal Property/Request for Declaratory Relief**: The Relief Order allowed Seabreeze to proceed with its state law remedies only as to real and personal property against which it had a valid lien. As Seabreeze failed to file a UCC-1, it never perfected any security interest against any personal property owned by the Debtor. Thus, Seabreeze had no authority to sell any of the Debtor's personal property at the January 6th foreclosure sale and the same remains property of the estate. On information and belief Seabreeze alleges that it did not sell any of the Debtor's sound recording and mixing equipment at the foreclosure sale. However, on information and belief, J.A.S. Family Partnership 3, Ltd., alleges that Elbar did purchase all of the sound recording and mixing equipment that was at the Ardmore Property at the time of foreclosure and that by virtue of its deed and/or assignment from Elbar that it owns such. The Trustee requests a declaratory judgment from the Court that Relief Order did not allow any foreclosure against any personal property owned by the Debtor, that such property was not subject to any lien in favor of Seabreeze and that any purported sale of such property violates 11 U.S.C. §362 and is null and void. Alternatively, the Trustee requests damages in the amount of the value of the property converted.

38.     BASED on the foregoing The Trustee that this Honorable Court grant judgment as follows:

a.      A judgment declaring that the sound recording and mixing equipment was not sold at the January 6, 2009 foreclosure sale and remains property of the estate;

b.      A money judgment, including pre and post judgment interest, reasonable and necessary

      attorneys fees as allowed by law, costs of court, against Douthitt for damages as a result of his conduct;

c.      A judgment equitably subordinating Douthitt's claim against the Ardmore Property and transferring any lien securing such to the Estate;

d.      A money judgment, including pre and post judgment interest, reasonable and necessary attorneys fees as allowed by law, costs of court, against Seabreeze, Colt, Long, Stumpf Farrimond and Elbar, jointly and severally, for damages as a result of their conduct;

e.      A judgment equitably subordinating Seabreeze's claim against the Ardmore Property and transferring any lien securing such to the Estate;

f.      Alternatively, an order voiding the January 6, 2009 foreclosure sale against the Ardmore Property;

g.      All other and further relief allowed by law to which the Trustee may be entitled.

      Respectfully submitted,
      RANDY W. WILLIAMS, TRUSTEE

      /s/ Marc Douglas Myers
BY:_____
Marc Douglas Myers
SBN: 00797133

OF COUNSEL:
**ADAIR & MYERS, P.L.L.C.**
3120 Southwest Freeway, Suite 320
Houston, TX  77098
(713) 522-2270 & (713) 522-3322, fax
COUNSEL FOR PLAINTIFF