

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

ENTERED
08/26/2010

| | | |
|---|---|---|
| IN RE: | § | |
| 7303 HOLDINGS, INC.; dba STUDIO 7303, | § | Case No. 08-36698 |
| Debtor(s). | § | |
| | § | Chapter 7 |
| | § | |
| RANDY W WILLIAMS, *et al*, | § | |
| Plaintiff(s) | § | |
| | § | |
| VS. | § | Adversary No. 10-03079 |
| | § | |
| SEABREEZE FINANCIAL, LLC, *et al*, | § | |
| Defendant(s). | § | Judge Isgur |

## MEMORANDUM OPINION

The Court denies the Defendant's motion to remand Douthitt's state law lien holder claims. However, the Court grants the Defendant's motion to remand Douthitt's state law prospective purchaser claims.

## Background

This adversary proceeding is connected to the bankruptcy of 7303 Holdings, Inc. ("7303 Holdings"). At the time of its bankruptcy filing, 7303 Holdings' principal assets were (i) a recording studio ("the Studio") located at 7303 Ardmore, Houston, Texas, with a scheduled value of $510,712; and (ii) recording equipment, scheduled at $700,000.

Prior to 7303 Holdings' bankruptcy, 7303 Holdings had issued a promissory note to SeaBreeze Financial, LLC, ("SeaBreeze") secured by a deed of trust in the Studio. On January 11, 2008, 7303 Holdings issued a note payable to James Douthitt, the plaintiff in this adversary proceeding. Douthitt's note was also secured by a deed of trust, but SeaBreeze's deed of trust had priority.

7303 Holdings filed a chapter 11 case on October 22, 2008.  On November 21, 2008, the Court entered an Agreed Order terminating the automatic stay to allow SeaBreeze to exercise its state law remedies against the Studio.  The Court converted 7303 Holdings' bankruptcy case to a chapter 7 case on November 25, 2008.

Around December 16, 2008, SeaBreeze's substitute trustee posted the Studio and the equipment for a foreclosure sale.  The foreclosure sale was to take place on January 6, 2009 between 10:00 a.m. and 1:00 p.m. in Harris County.  On January 6, 2009, Douthitt attended the foreclosure sale to protect his subordinate lien.  Douthitt alleges that SeaBreeze's substitute trustee conducted three foreclosure sales.  Two of the sales, Douthitt alleges, took place outside the advertised three-hour window.  *See* TEX. PROP. CODE § 51.002(c) (requiring foreclosure sales to begin within three hours of advertised time).  Douthitt alleges that in the third foreclosure sale, SeaBreeze's substitute trustee sold the Studio to Elbar Investments, Inc., which transferred the Studio to J.A.S. Family Partnership.

Douthitt provides extensive allegations regarding the three foreclosure sales.  Doc. No. 1-1, at 6-10.  On the day of the foreclosure, according to Douthitt, the substitute trustee began the sale at approximately 10:00 a.m.  The only persons who bid at that sale were Douthitt; Charles Long, an attorney representing SeaBreeze; and James Prince.  In the first sale, Prince had the highest bid at $675,000.00.  Douthitt had the second highest bid at $650,000.  The substitute trustee announced that Prince was the winning bidder, and Prince stated that he would transfer funds to the substitute trustee to pay for the Studio.  Douthitt approached Prince to make sure Douthitt would be paid the money due on his note.  Prince then explained that the bid price was too high.  Prince informed the substitute trustee that he would not pay the bid price, and the substitute trustee announced that there would be another foreclosure sale at 3:00 p.m.

Prior to the time of the second sale, Douthitt obtained a cashier's check in the amount of $482,074.80 to pay for the Studio. At the second foreclosure sale, Douthitt alleges that he bid against Vincent Bustamante, who represented Defendant Elbar Investments, Inc. According to Douthitt, Douthitt won the bidding and presented the substitute trustee the $482,074.80 cashier's check and some additional funds in cash. Douthitt states that he told the substitute trustee he would write a check for the remainder. Douthitt alleges that the substitute trustee told Douthitt this payment was unacceptable. The substitute trustee allegedly gave Douthitt until 3:46 p.m. to deliver $501,000 in cash or cash equivalents.

Because he did not have enough time to travel to the bank for cash, Douthitt states, he attempted to obtain a loan from Bustamante, who agreed to provide $20,000 in cash in exchange for at $38,000 check. Douthitt alleges that Bustamante changed his mind, and the substitute trustee began the third foreclosure sale at 3:46 p.m. At the third sale, Douthitt bid the $482,074.80 cashier's check plus some additional money in cash. Bustamante, on behalf of Elbar, bid $482,500 and was declared the winning bidder. Douthitt then tried to arrange to purchase the Studio from Bustamante. However, Douthitt later learned that Bustamante had sold the Studio to Prince. Douthitt alleges that the final foreclosure sale did not comply with Texas Property Code § 51,002(c). Douthitt further alleges that he should have been declared the successful purchaser at the first foreclosure sale.

Following the foreclosure sale, on December 4, 2009, Douthitt filed a state court lawsuit against SeaBreeze and other Defendants, including Elbar Investments, Inc.; J.A.S. Family Partnership; SeaBreeze's substitute trustee Kathleen Colt; and Stumpf, Farrimond, P.C., the law firm for which Colt works. Doc. No. 1-1. Douthitt alleged that the foreclosure sale was invalid and that SeaBreeze had received funds from the purchaser in excess of its lien interest. *Id.* at 13.

As a lien holder, Douthitt requested a declaratory judgment to have the foreclosure sale voided and asserted claims for conversion, fraud, negligent misrepresentation, and conspiracy in connection with the foreclosure sale. *Id.* at 12-17. As a prospective purchaser, Douthitt asserted claims of fraud, negligent misrepresentation, and conspiracy. *Id. See also* Doc. No. 57, at 2-4. In addition to the declaratory judgment, Douthitt sought damages in the amount of the surplus SeaBreeze allegedly received at the foreclosure sale, up to the amount of Douthitt's lien on the Studio; all damages, losses, costs, and expenses incurred as a result of fraud, negligent misrepresentation, and conspiracy; and attorney's fees. *Id.* at 13-17.

On January 8, 2010, 7303 Holdings' chapter 7 Trustee intervened in the state court action, and on January 11, 2010, the Trustee removed the action to this Court. On February 17, 2010, Douthitt filed a motion to remand the case. At a hearing on May 17, 2010, the parties scheduled discovery and briefing on the motion to remand. The Court set an evidentiary hearing on the motion to remand for July 1, 2010.

Douthitt and the Defendants timely filed briefs, and a hearing on the motion to remand was held on July 1, 2010. At hearing, the Court denied in part and granted in part the motion to remand.

## Analysis

Bankruptcy courts are courts of limited jurisdiction. Under 28 U.S.C. § 1334, district courts have jurisdiction over cases under title 11, proceedings arising under title 11, proceedings arising in cases under title 11, and proceedings related to cases under title 11. In addition, § 1334(e) gives the District Court exclusive jurisdiction over property of the estate. A bankruptcy court's jurisdiction is derivative of the district court's jurisdiction. 28 U.S.C. § 157(a). The bankruptcy court does not have jurisdiction unless the district court could exercise

authority over the matter, the matter is a bankruptcy case or a proceeding arising in, arising under, or related to a bankruptcy case, and the district court has referred the matter to the bankruptcy courts.  28 U.S.C. § 157(a).  Claims that arise under or arise in the bankruptcy case are core proceedings under § 157(b).

Section 1334 grants jurisdiction over Douthitt's claims as a lien holder, all of which arise in the 7303 Holdings bankruptcy case.  The Court retains jurisdiction over these claims. Douthitt's claims as a prospective purchaser, however, fall outside the Court's bankruptcy jurisdiction.  These claims do not arise under or arise in the 7303 Holdings bankruptcy case, and they are not related to the bankruptcy case.  Douthitt's prospective purchaser claims are therefore remanded to the state court.

**1.  Douthitt's State Law Claims as Lien Holder**

Douthitt's state law claims as a lien holder fall within the Court's jurisdiction.  These claims involve the sale of estate property and are core matters.  Douthitt's claim for a declaratory judgment to have the foreclosure sale declared invalid falls within the exclusive jurisdiction of the Court under § 1334(e)(1), which gives the district court—and, derivatively, this Court— exclusive jurisdiction over the property of the estate.  *Kane Enters. v. MacGregor (USA) Inc.*, 322 F.3d 371, 374 (5th Cir. 2003) (holding that an equitable lien could not be asserted against estate property in any court outside of the court in which the bankruptcy case was pending because the court in which bankruptcy case was pending had "exclusive jurisdiction over property of the estate").

Douthitt's other lien holder claims also fall within the Court's jurisdiction, and the conversion claim falls within the Court's exclusive jurisdiction. Douthitt's claims for conversion, fraud, negligent misrepresentation, and conspiracy all arose out of a foreclosure sale that took place after the automatic stay was lifted in the 7303 Holdings bankruptcy. For the conversion claim, Douthitt seeks damages in the amount of the surplus SeaBreeze allegedly received in the foreclosure sale. Because the automatic stay was lifted as to SeaBreeze but not as to any other creditor, any excess funds SeaBreeze received would have to be turned over to the chapter 7 Trustee. Douthitt's damages for the alleged surplus would pass through the estate and would offset Douthitt's claim against the estate. If Douthitt's claim for a surplus is valid, in other words, the surplus is property of the estate and falls under the exclusive jurisdiction of the Court under § 1334(e)(1). *See Brown v. Dellinger*, 22 B.R. 844, 849-50 (Bankr. N.D.N.Y. 1982) (holding that a debtor's claim to alleged surplus proceeds of a foreclosure sale falls under the bankruptcy court's exclusive jurisdiction over property of the estate, because the court's "exclusive jurisdiction includes the power to resolve competing claims to property alleged to belong to the Debtor"). Douthitt's conversion claim therefore falls under the exclusive jurisdiction of the Court.

Douthitt's other lien holder claims—for fraud, negligent misrepresentation, and conspiracy—are core proceedings. For each of these claims, Douthitt's argument for damages depends on his allegation that SeaBreeze's lien on the Studio was for less than the amount SeaBreeze received in the foreclosure sale. A determination that Douthitt should be awarded damages for any of the lien holder claims would therefore require an adjustment of the debtor-creditor relationship between SeaBreeze and the estate. Because the claims concern the administration of the estate, involve a determination of the validity and extent of SeaBreeze and

Douthitt's liens on the Studio, affect the liquidation of the assets of the estate, and could lead to the adjustment of the debtor-creditor relationship between SeaBreeze and the estate and between Douthitt and the estate, the lien holder claims are core proceedings under § 157(b)(2)(A), (K), and (O).

All of Douthitt's lien holder claims arise in the 7303 Holdings bankruptcy and are within the Court's exclusive jurisdiction or within the Court's core jurisdiction.

**2. Douthitt's State Law Claims as Prospective Purchaser**

Douthitt's claims as a prospective purchaser do not arise in the 7303 Holdings bankruptcy, and they are not related to the 7303 Holdings bankruptcy. The Court therefore does not have jurisdiction over those claims.

The prospective purchaser claims do not relate to the 7303 Holdings bankruptcy case. 7303 Holdings is not a party to any of the prospective purchaser claims. The outcome of the litigation of those claims could have no conceivable effect on the 7303 Holdings bankruptcy estate. A claim that happens to arise from a transaction involving property of the estate is not related to a bankruptcy case if the claim's outcome would not affect the estate. *See Valley Historic Ltd. P'ship v. Bank of New York*, 486 F.3d 831, 836-37 (4th Cir. 2007) (holding that a debtor's claims against a creditor bank for breach of contract and tortious interference with contract, arising out of the bank's alleged offer to debtor's tenant to sell debtor's property below market value, were not related to the bankruptcy case where the chapter 11 plan made no provision for use of any recovery from the proceeding); *Boone v. Cmty. Bank of Homestead*, 52 F.3d 958, 960 (11th Cir. 1995) (holding that debtors' claim for intentional interference with the sale of their house was not related to a bankruptcy proceeding where the conduct giving rise to the claim occurred after the bankruptcy petition and any damages would belong solely to the

debtors and, because the debtors were in chapter 7 bankruptcy, would not affect their compliance with any reorganization plan).

If Douthitt recovers damages for the prospective purchaser claims, the damages will benefit only Douthitt.  The outcome of the litigation of these claims will not affect Douthitt's claim against the estate, the property of the estate, or the administration of the estate.  These claims do not relate to the 7303 Holdings bankruptcy case.

Defendants argued at the hearing that the prospective purchaser claims were so closely connected to the lienholder claims—based on the same transaction and body of facts—that they effectively became core proceedings.  The prospective purchaser claims, according to Defendants, are "inextricably intertwined" with the lien holder claims and thus fall within the Court's jurisdiction.  Doc. No. 61, at 5.  Alternatively, because core proceedings "predominate" among Douthitt's claims, Defendants argued, the Court should exercise jurisdiction over all the claims.  *Id.*

The prospective purchaser claims do not become core proceedings (or even related-to proceedings) simply because they involve the same facts as the lien holder claims.  *See Boone*, 52 F.3d at 961 ("[A]lthough the claim to determine the extent of the Bank's lien and the tortious interference claim will share the common factual issue of the effect of the dragnet clause, this 'common issue[ ] of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of § 1334(b).'") (quoting *Miller v. Kemira, Inc. (In re Lemco)*, 910 F.2d 784, 789 (11th Cir. 1990)).

Even substantial overlap of the facts does not affect whether this Court may consider the purchaser claims.  In the Fifth Circuit, bankruptcy courts may not exercise supplemental jurisdiction.  *Edge Petroleum Operating Co. v. GPR Holdings LLC (In re TXNB Internal Case)*,

483 F.3d 292, 299 (5th Cir. 2007) (citing *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 570 (5th Cir. 1995)).   Although the district court could exercise supplemental jurisdiction over Douthitt's prospective purchaser claims, the Bankruptcy Court may not exercise supplemental jurisdiction over claims that would not otherwise fall within the Court's jurisdiction.   The Bankruptcy Court must have bankruptcy-related jurisdiction over each claim independently. *WRT Creditors Liquidation Trust v. C.I.B.C. Oppenheimer Corp.*, 75 F.Supp.2d 596, 608 (S.D. Tex. 1999) ("The 'proceeding' must refer to each cause of action or right of recovery pled.   This is the only interpretation which would adequately heed the constitutional concerns in *Marathon*. . . . Each claim must, on its own, satisfy the requirements of § 157(b).") (quoting *Ralls v. Docktor Pet Ctrs., Inc.*, 177 B.R. 420, 425 n.6 (D. Mass. 1995)).   If Douthitt or another party had moved for withdrawal of the reference, all the state-law claims could potentially have been adjudicated by the district court.   However, the Bankruptcy Court may not adjudicate Douthitt's prospective purchaser claims.   The claims must be remanded, regardless of whether they are based on the same body of facts as claims that are core proceedings.

The prospective purchaser claims also do not fall within the Court's exclusive jurisdiction under 28 U.S.C. § 1334(e).   The Court's exclusive jurisdiction over the property of the estate extends to actions seeking to determine "ownership of, or rights in and to, property of the estate." *Landry v. Exxon Pipeline Co.*, 260 B.R. 769, 781-82 (Bankr. M.D. La. 2001) (holding that a bankruptcy court's exclusive jurisdiction did not apply to an *in personam* action that was not targeted to determining rights in property of the estate).   It does not extend to personal claims that happen to be connected to the sale of estate property.   *See Valley Historic*, 486 F.3d at 838 (noting in dicta that the bankruptcy court would not have jurisdiction over breach of contract and tortious interference claims even where the contracts related to property of the estate).

Judicial economy is not a sufficient justification for exercising jurisdiction where the statute has not granted jurisdiction. *Boone*, 52 F.3d at 961 (citing *Miller*, 910 F.2d at 789). The Court remands Douthitt's state law claims as a prospective purchaser.

### 3. Legal Fees

Douthitt's claims for legal fees are inextricable from the substantive claims to which they are connected. The Court therefore retains jurisdiction over the claims for legal fees in relation to the declaratory judgment claim and the lien holder claims for conversion, fraud, negligent misrepresentation, and conspiracy. The Court remands the claims for legal fees in relation to the prospective purchaser claims for fraud, negligent misrepresentation, and conspiracy.

### 4. Equitable Remand

Douthitt has also argued for equitable remand of the state law claims. Because the Court does not have jurisdiction over the prospective purchaser claims, the Court need not consider the argument for equitable remand with regard to those claims.

The Court denies equitable remand on the state law lien holder claims. The Court has the discretion to remand a claim on any equitable ground. 28 U.S.C. § 1452(b). Equitable remand is based on multiple factors. *Browning v. Navarro*, 743 F.2d 1069, 1077 n.21 (5th Cir. 1984) (listing potential equitable grounds for remand). In his brief, Douthitt argued that several factors weighed in favor of equitable remand of all the state law claims: (a) the duplicative and uneconomical use of judicial resources; (b) the prejudice to the parties involved; (c) the existence of questions of state law that are better addressed by state court; (d) comity considerations; (e) the effect of remand on the administration of the bankruptcy estate; (f) the expertise of the court where the action originated; and (g) the right to a jury trial. Doc. No. 13 at 10-11.

At the hearing, Douthitt presented no evidence to support his argument for equitable remand. Douthitt's main argument for equitable remand of the lien holder claims at hearing was that bifurcation of the proceedings would be uneconomical. Douthitt also noted that the right to a jury trial weighed in favor of equitable remand.

These judicial economy factors are not enough to warrant equitable remand. First, as explained above, the claim for declaratory judgment and the conversion claim fall under the Court's exclusive jurisdiction over the property of the estate. 28 U.S.C. § 1334(e). If the Court remanded those claims, the state court would be unable to exercise jurisdiction. *Landry*, 260 B.R. at 781 ("If the matter is one over which the federal courts have exclusive jurisdiction, remand would effectively act as a dismissal of the suit. The Plaintiffs could not proceed in a court without jurisdiction[.]") Remanding the claims to the state court would "effectively eliminate any ability [Douthitt has] to seek redress[.]" *Id.* "[A] matter in which exclusive jurisdiction is posited within the federal courts eliminates any equitable rationale for remand. The matter cannot proceed in a state court, and therefore, must advance in the federal court." *Id.*

Moreover, Douthitt failed to provide any evidence other than the legal arguments on the record, much less any facts concerning the relative weight of equitable remand factors. The Court therefore declines to equitably remand the state law lien holder claims.

## Conclusion

The Court retains jurisdiction over the claim for declaratory judgment concerning the validity of the foreclosure and Douthitt's claims as a lien holder for conversion, fraud, negligent misrepresentation, and conspiracy. Douthitt's claims as a prospective purchaser, however, are not related to the 7303 Holdings, Inc. bankruptcy case and fall outside the bankruptcy

jurisdiction of the Court.  The Court remands Douthitt's claims as a prospective purchaser for fraud, negligent misrepresentation, and conspiracy.


SIGNED **August 26, 2010.**


Marvin Isgur
UNITED STATES BANKRUPTCY JUDGE